# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS RUSSIAN, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 6889 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CITY OF CHICAGO and CHICAGO | ) | |
| POLICE OFFICER K. NAVARRO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carlos Russian has sued the City of Chicago and Chicago Police Officer Kevin Navarro pursuant to 42 U.S.C. § 1983 for violating his constitutional rights under the Fourth Amendment to the United States Constitution, as well as for battery and negligence pursuant to state law. In addition, Plaintiff has sued the City of Chicago for *respondeat superior* liability and indemnification under Illinois law. The City of Chicago and Officer Navarro ("Defendants") have moved for summary judgment. For the reasons provided herein, the Court grants Defendants' motion.[1]

## Factual Background

The following facts are undisputed unless otherwise noted. On August 30, 2011 at around 2:00 a.m., Officer Navarro responded to a call from the police dispatcher to investigate a complaint about drag racing on South Chicago Avenue. Defs.' LR 56.1(a)(3) Stmt., Ex. B, Navarro Dep. at 34:4-14. South Chicago Avenue has two southbound lanes, two northbound lanes, as well as bike and parking lanes on each side. *Id.* ¶ 21. This particular stretch of South

---

[1] In response to the instant motion for summary judgment, Plaintiff has agreed to dismiss Count V, which alleges that the City breached its duty to train, supervise, and discipline Navarro. Pl.'s Resp. Br. 1. Count V is therefore dismissed with prejudice.

Chicago Avenue is well known by Chicago police officers, including Navarro, for drag racing. *Id.* at 25:5-13, 28:5-10, 40:21-41:2, 73:5-9. It is also known as a common late-night meeting place for motorcyclists. *Id.* Ex. C, Benjamin Perez Dep. at 26:9-20, 28:11-21, Ex. E, Plaintiff's Dep. at 81:14-20.

When Navarro was about three quarters of a mile away from the site of the incident, he could hear the revving of engines. *Id.* ¶ 19. Based on his prior investigations into incidents of drag racing, Navarro believed the revving of engines signaled that a race was about to begin. *Id.* Ex. B, Navarro Dep. at 35:15-19. As Navarro drove northbound on South Chicago Avenue, he no longer heard the revving of engines. *Id.* ¶ 24. As Navarro continued driving northbound on South Chicago Avenue, he observed a crowd of people gathered on the west side of the street, both on the sidewalk and in the street.[2] *Id.* ¶ 27. Navarro also saw the headlights of two motorcycles that were stationary at a traffic light approximately two hundred feet north of the crowd's location. *Id.* ¶¶ 31-32. Plaintiff Carlos Russian was one of the two motorcyclists. *Id.* ¶ 33. Based on his prior experiences, Navarro believed that these individuals could be either participants in, or observers of, drag racing. *Id.* ¶ 30.

Navarro then drove into the southbound lane driving northbound.[3] *Id.* ¶ 34. It is undisputed that the two motorcycles were stationary when Navarro moved into the southbound lane. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 24. It is also undisputed that both motorcyclists only started moving southbound towards Navarro when Navarro was already travelling northbound in the southbound lane. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 28; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36 (Plaintiff

---

[2] Plaintiff's friend, Franklin Perez, who was present in the crowd on the night of the incident, testified that there were probably more than fifteen people in the crowd. Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. 3, Jan. 23, 2012 Trial Tr. at 64:14-65:17. Defendant Navarro testified there were between ten and twenty people. Defs.' LR 56.1(a)(3) Stmt. ¶ 36, Ex. B, Navarro Dep. at 42:2-12.

[3] The headlights on Officer Navarro's police SUV were on, but neither the emergency lights nor sirens were activated. *Id.* ¶ 35.

stating that "The motorcycles started to move southbound only after Navarro drove toward the motorcycles whilst in the southbound lane."). The parties agree that Navarro crossed into the southbound lane because he wanted to issue tickets to the motorcyclists for drag racing. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12.

Plaintiff asserts, and Defendants dispute, that when Defendant Navarro entered the southbound lanes, he drove directly toward the stationary motorcycles. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12; Pl.'s' LR 56.1(b)(3)(B) Stmt. ¶ 34. Defendants counter, and Plaintiff denies, that Navarro drove his car over to the curb toward the crowd. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 34, 36, Ex. B, Navarro Dep. at 46:2-15.

Defendant Navarro states that he did not notice the headlights of the motorcycles coming toward him until a second before impact. Defs.' LR 56.1(a)(3) Stmt. ¶ 37.[4] When Navarro realized that the motorcycles were coming toward him, he did not want to move his vehicle either to the left or right. *Id.*, Ex. B, Navarro Dep. at 52:24-53:4, 53:3-13. Rather, he wanted to stay where he was because he did not believe the motorcycles were going to come directly at him. *Id.* at.

Russian first saw Navarro's headlights in the lane closest to the curb, facing toward him. *Id.* ¶ 38. Once Russian's motorcycle was in motion, Russian was unable to stop or drive onto the curb to avoid the collision. *Id.* ¶ 42.

Navarro's car and Russian's motorcycle collided head on. *Id.* ¶ 44. Russian's speed right before impact was between twenty-five and thirty-five miles per hour. *Id.* ¶ 39. Although Navarro stated that his foot was on the accelerator before the collision, Navarro's car was

---

[4] This fact statement is deemed admitted because the exhibit upon which Plaintiff relies in support of his denial does not show the motorcycles in motion before Navarro had already moved into the southbound lanes and because Plaintiff concedes that the motorcycles started to move southbound only after Navarro drove toward the motorcycles whilst in the southbound lane. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36.

decelerating right before, and at the moment of, the collision. *Compare* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 15, Ex. 3, Jan. 23, 2012 Trial Transcript, Navarro Testimony at 25:14-17 (stating that his foot was on the accelerator), *with* Defs.' Ex. B, Navarro Dep. at 52:24-53:3-17 (stating that he was moving forward but slowing down), *and* Defs.' Ex. D, Dash Camera Video at 10:11-10:14 (showing that the vehicle was decelerating immediately before the collision).

**Legal Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013); *see Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992). Section 1983 permits an individual to sue for damages for the deprivation of rights "secured by the Constitution and laws of the United States." *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994); *see Kole v. Vill. of Norridge,* 941 F. Supp. 2d 933, 962 (N.D. Ill. 2013).

**Analysis**

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. Thus, the Fourth Amendment inquiry necessarily begins with a determination of whether a seizure actually occurred. *See Leaf v. Shelnutt,* 400 F.3d 1070, 1089 (7th Cir. 2005) ("In order to determine whether [an officer] seized [an individual] in violation of the Fourth Amendment, . . . [w]e first consider whether [the individual] was seized . . . ."). If that question is answered in the affirmative, then the court asks whether the seizure was unreasonable. *See Brower v. Cnty. of Inyo,* 489 U.S. 593, 599 (1989) ("'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'").

4

Defendants argue that summary judgment should be granted because Defendant Navarro did not seize Plaintiff under the Fourth Amendment and did not intend to cause a harmful contact with Plaintiff. Plaintiff contends that he has created a genuine issue of material fact as to whether Defendant Navarro intentionally created a roadblock or obstacle for the purpose of terminating Plaintiff's movement and thus violated his Fourth Amendment right to be free from unreasonable seizures.

**A. Whether a Seizure Took Place**

To begin, "[n]ot every interaction between police and citizens involves a 'seizure' of the citizen." *Hall v. City of Chi.*, 989 F. Supp. 2d 699, 704 (N.D. Ill. 2013). "Violation of the Fourth Amendment requires an *intentional* acquisition of physical control." *Brower*, 489 U.S. at 596 (emphasis added). "[M]ere physical contact by an officer, although a significant factor, does not automatically qualify an encounter as a Fourth Amendment seizure." *Carlson v. Bukovic*, 621 F.3d 610, 620 (7th Cir. 2010) (emphasis in original). "To presume the existence of a seizure [in every case involving physical contact] ignores the distinction that has been made between an accidental or tortious act which happens to be committed by a government official and an intentional detention that rises to the level of a constitutional violation." *Campbell v. White*, 916 F.2d 421, 422-23 (7th Cir. 1990). Therefore, "[a] collision which results from an officer's negligence alone is not a 'seizure' for Fourth Amendment purposes." *Williams v. Musser*, No. 94 C 4140, 1997 WL 403509, at *6 (N.D. Ill. Jul. 16, 1997).

The Supreme Court's analysis in *Brower v. County of Inyo* provides the controlling standard. 489 U.S. at 594. In *Brower,* following a high-speed chase, the plaintiff's decedent, Brower, crashed the stolen vehicle he was driving into a police roadblock. *Id.* The plaintiff brought suit under section 1983, claiming, among other things, that the defendants had effected

5

an unreasonable seizure. *Id.* The plaintiff alleged that the police had erected a "deadman's roadblock" by positioning an 18-wheel truck across both lanes of a two-lane highway in the path of Brower's flight. In addition, the plaintiff asserted that the officers had concealed the roadblock by placing it behind a curve, leaving it unilluminated, with a police car's headlights aimed in such a fashion as to blind Brower on his approach. *Id.* The Supreme Court held that these allegations were sufficient to state that a "seizure" had been effected. *Id.* at 599. The Court held:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

489 U.S. at 596–97 (emphasis in original).

The facts in *Brower* are distinguishable from the case at hand. First and foremost, it is undisputed that, when Navarro crossed over into the southbound lane, Plaintiff's motorcycle was stationary. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 24, 28. Because Plaintiff's motorcycle was not moving when Navarro's vehicle was traveling into the southbound lane, the Court concludes that no reasonable jury could find that Defendant Navarro intended to cause the collision by driving into the southbound lane or knew that a collision would be unavoidable. Nor is there any evidence that Navarro had moved his vehicle in order to collide with Plaintiff's motorcycle. Along the same lines, there is no evidence in the record that Navarro knew that Plaintiff's motorcycle would begin to move toward him once Navarro had driven into the southbound lane. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 36-38.

Furthermore, unlike the facts in *Brower*, the record is devoid of any evidence that Navarro intended to conceal the presence of his vehicle in the southbound lane. When the

incident occurred at approximately 2:00 a.m., South Chicago Avenue was empty. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 25-26; Defs.' Ex. D, Dash Cam Video at 10:11-10:14. Navarro's vehicle was the only vehicle, other than the two motorcycles, on that stretch of South Chicago Avenue. *Id.* Moreover, Navarro's vehicle had its headlights illuminated and was in one of the southbound lanes directly facing the stationary motorcyclists located approximately 200 yards away. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 27-32. Plaintiff saw the headlights of Navarro's vehicle when it was in the southbound lane. *Id.* ¶ 38. Furthermore, Plaintiff cites to no facts to support any theory that Navarro had intentionally aimed his headlights toward Plaintiff to blind him and obscure's Navarro's presence. *Id.* ¶¶ 27-32.

In addition, the collision in *Brower* followed a high-speed pursuit of the decedent and the officers determined there was no other way to stop the vehicles other than to use an obstacle or roadblock. There was no such pursuit here; Defendant Navarro was investigating a general complaint of drag racing and came upon a crowd and two stationary bikes. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 14, 27.

Plaintiff also relies on *Donovan v. City of Milwaukee*, 17 F.3d 944 (7th Cir. 1994), to argue that Defendant Navarro's conduct constituted a seizure under the Fourth Amendment. In *Donovan,* two officers heard a loud explosion and saw a flash of light at approximately 4:00 a.m. They then observed a man on a motorcycle with a passenger and decided to ask them if they had information about the explosion. *Id.* at 946. After the officers were unable to persuade the driver to pull over, the officers engaged in a high-speed chase. *Id.* During the chase, three other officers set up roadblocks to stop the motorcycle by positioning their squad cars to partially block the street on which the motorcycle was travelling. *Id.* The chase ended when one of the squad cars intentionally backed up into the motorcyclist's path. *Id.*

7

Plaintiff's reliance on *Donovan* is misplaced because the *Donovan* court ultimately determined that it need not decide whether a seizure occurred. *Id.* at 950-51. Rather, the court granted the defendants' summary judgment motion on qualified immunity grounds. *Id.* at 952-53. Because the *Donovan* court did not reach the issue of whether a seizure occurred, it is distinguishable on that basis.

For their part, Defendants rely on *Williams v. Musser*, No. 94 C 4140, 1997 WL 403509, at \*\*6-8 (N.D. Ill. July 16, 1997), and *Campbell v. White*, 916 F.2d 421, 423 (7th Cir. 1990), to support their position. In *Williams*, two police officers, each driving his own vehicle, engaged in a high-speed pursuit of the plaintiff motorcyclist. 1997 WL 403509, at \*\*1–2. Following a lengthy chase with multiple starts and stops, each officer's vehicle collided with the plaintiff at an intersection. *Id.* at \*\*2–3. The *Williams* court granted summary judgment in favor of one officer, Officer Henry, because it was undisputed that he was braking at the time of impact. *Id.* at \*6. As a result, the Court held that the plaintiff had failed to create a triable issue as to whether "Officer Henry's car was the means intended by Officer Henry to end the pursuit." *Id.* The court explained that "[i]t is simply not sufficient that Officer Henry pursued and the pursuit resulted in a collision." *Id.* (internal quotations omitted). The court denied summary judgment as to the other officer, however, because he had come to a complete stop and then accelerated into the plaintiff, creating an issue of fact as to whether he intended to collide into the plaintiff's vehicle. *Id.* at 7.

In *Campbell,* an Illinois State Trooper observed motorcyclist Campbell speeding well in excess of the posted fifty-five mile per hour limit. 916 F.2d at 421. The trooper began a high-speed pursuit but lost sight of the motorcycle's taillights as the road curved. *Id.* During that period of time, Campbell lost control of his motorcycle, traveled into the median, got off the

8

motorcycle, and walked back onto the highway. *Id.* As the trooper passed another vehicle, he suddenly observed Campbell standing in the passing lane. *Id.* at 421. The trooper tried to avoid Campbell, but his vehicle struck and killed him. *Id.* at 421–22. The Seventh Circuit held that no seizure had occurred:

> While it is clear that Officer White intended to stop Campbell . . . for speeding and that White's actions caused, or contributed to, a "termination of [Campbell's] freedom of movement," there is no evidence whatsoever to suggest that White intended physically to stop or detain Campbell by running over him with his car in the event Campbell refused to pull over voluntarily. The collision between White and Campbell was not "*the means intentionally applied*" to effect the stop, but was rather an unfortunate and regrettable accident.

*Id.* at 423.

These cases are instructive. Just as the plaintiff in *Williams* failed to create a genuine issue of fact as to Officer Henry's intent, Plaintiff has failed to create a triable issue as to whether Navarro intended to stop Plaintiff's motorcycle with his vehicle via the collision. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 27-32, 36-38; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 24, 28; Defs.' LR 56.1(a)(3) Stmt. ¶¶ 14, 27. Although Plaintiff points to the fact that Navarro stated that his foot was on the accelerator before the collision, this does not establish a triable issue as to whether the car was actually speeding up before the collision in order to show Navarro's intent. Because the dash cam video shows Navarro's vehicle decelerating and because a person's foot may be on the accelerator while coasting and decelerating, the evidence in the summary judgment record does not create an issue of fact as to whether Defendant Navarro's car was accelerating right before the collision. See Defs.' LR 56.1(a)(3) Stmt., Ex. B, Navarro Dep. at 52:7-53:17, Ex. D, Dash Cam Video at 10:11-10:14.

Additionally, as in *Campbell*, although it is clear that Navarro intended to investigate and stop the drag race and that his actions contributed to a termination of Plaintiff's movement, there is no evidence from which to infer that Navarro intended to create a collision to stop Plaintiff's

9

movement. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 27-32, 36-38; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 24, 28; Defs.' LR 56.1(a)(3) Stmt. ¶¶ 14, 27. At best, the evidence in the instant case shows that the collision between Defendant Navarro and Plaintiff was the result of an "unfortunate and regrettable accident," rather than a "means intentionally applied." 916 F.2d at 423. The evidence—construed most liberally in favor of Plaintiff—establishes little more than Plaintiff's subjective belief that Defendant Navarro intended to stop Plaintiff by colliding with him. This subjective belief is insufficient to create a reasonable inference that Defendant Navarro intended to crash into Plaintiff.[5]

Based on the summary judgment record, there is no triable issue of fact regarding whether a seizure occurred. The Court thus grants Defendants' motion for summary judgment as to Count VI.

### C. Qualified Immunity

"In evaluating qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chi.*, 733 F.3d 749, 758 (7th Cir. 2013) (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). The Court has already answered the first question in the negative: the facts in this case, taken in the light most favorable to Plaintiff, do not show a violation of his constitutional right to be free from unreasonable seizure and Defendants are entitled to judgment as a matter of law. Therefore, the Court need not address the issue of qualified immunity as to Plaintiff's Fourth Amendment claim. *See, e.g., Tucker v. Williams*, 682

---

[5] Because the Court holds that Plaintiff has failed to create a genuine issue of fact as to whether a seizure occurred, it need not make a determination as to reasonableness of any hypothetical seizure. *Campbell*, 916 F.2d at 423 ("Absent a seizure, a discussion of the reasonableness of Officer White's actions would be merely academic.")

F.3d 654, 660 (7th Cir. 2012) ("Because we do not find a constitutional violation, we need not and do not address Williams' qualified immunity defense.").

      **D.**      **Remaining State Law Claims**

When a district court dismisses all of the federal claims over which it has original jurisdiction, it has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–52 (7th Cir. 1994) (stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts"). Given the nature of the state law tort claims at issue, the Court exercises its discretion to decline supplemental jurisdiction as to Counts I, II, III, IV, and VII and dismisses these counts without prejudice.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part Defendants' motion for partial summary judgment [44]. The Court grants Defendants' motion as to the federal claims asserted in Counts V and VI. The Court declines to exercise supplemental jurisdiction as to Plaintiff's state law claims asserted in Counts I, II, III, IV, and VII, which are dismissed without prejudice. This case is hereby terminated.

**SO ORDERED**                                **ENTER: 12/18/14**

*[signature]*

                                          **JOHN Z. LEE**

                                          **United States District Judge**